UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ANTHONY DeLEON JACKSON, | ) | No. CV 15-1176-PLA |
| Petitioner, | ) | |
| | ) | **MEMORANDUM DECISION AND ORDER** |
| v. | ) | |
| CLARK DUCART, Warden, | ) | |
| Respondent. | ) | |
| _____ | ) | |

**I.**

**SUMMARY OF PROCEEDINGS**

On March 16, 2009, a Los Angeles County Superior Court jury convicted petitioner of one count of second-degree robbery, in violation of California Penal Code section 211.  (Clerk's Transcript ["CT"] 139).  The jury also found that the victim was over the age of sixty-five within the meaning of California Penal Code section 1203.09(f). (Id.).  Petitioner admitted that he had suffered two prior convictions, both of which were alleged as prior prison terms within the meaning of California Penal Code section 667.5(b) and one of which was alleged as a "strike" within the meaning of California's Three Strikes Law (Cal. Penal Code §§ 667 (b)-(i), 1170.12 (a)-(d)).

1  (Reporter's Transcript ["RT"] 1202-08).  He was sentenced to a term of twelve years in state

2  prison.  (CT 305-08).

3      Petitioner filed a direct appeal.  (Lodgment Nos. 4-5).  On December 16, 2013, the

4  California Court of Appeal affirmed the conviction.  (Lodgment No. 6).  Petitioner subsequently

5  filed a petition for review in the California Supreme Court, which was denied without comment on

6  March 12, 2014.  (Lodgment Nos. 7-8).

7      On February 18, 2015, petitioner filed his Petition in this Court, and consented to have the

8  undersigned Magistrate Judge conduct all further proceedings in this matter.  (Docket Nos. 1-2).

9  Respondent, likewise, consented to have the undersigned Magistrate Judge conduct all further

10  proceedings and, thereafter, filed an Answer and a supporting Memorandum of Points and

11  Authorities ("Answer").  (Docket Nos. 13, 18).  On November 2, 2015, petitioner filed a Traverse

12  to respondent's Answer.  (Docket No. 24).

13      This matter has been taken under submission, and is ready for decision.

14

15                                                  **II.**

16                                    **FACTUAL BACKGROUND**

17      The Court adopts the factual summary set forth in the California Court of Appeal's Opinion

18  affirming petitioner's conviction.

19              [Petitioner] was charged in an information with committing
           murder (Pen. Code, § 187, subd. (a)) in June 2003, with special
20         allegations he had personally used a firearm (§ 12022.53, subds. (d),
           (e)(1)) and had committed the offense for the benefit of a criminal
21         street gang (§ 186.22, subd. (b)(1)) (L.A.S.C. case no. BA256155).
           Represented by appointed counsel William Monterroso, [petitioner]
22         entered a negotiated plea of no contest on July 20, 2004 to acting as
           an accessory to a gang-related murder (§§ 32, 186.22, subd. (b)(1)).
23         As agreed, [petitioner] received an aggregate state prison sentence
           of six years, consisting of three years for acting as an accessory and
24         three years for the gang enhancement.  The murder count and
           firearm-use allegations were dismissed "contingent upon the
25         continuing validity of the plea."  The record of the plea proceedings
           was silent as to the characterization of the conviction as a strike or
26         non-strike.  In the face of this silence, when the court asked
           [petitioner], "Has anyone made any threats to you or promised you
27         anything other than what I have stated in open court in order to get
           you to accept this plea?" [petitioner] replied, "No, sir."

28

                                                    2

After [petitioner] stole an elderly man's necklace in 2011, he was charged in a second amended information with second degree robbery (§ 211) with a special allegation the victim was 65 years of age or older (§ 667.9, subd. (a)).  The information also specially alleged [petitioner] had suffered one prior serious or violent felony conviction for acting as an accessory to a gang-related murder within the meaning of section 667, subdivision (a)(1) and the three strikes law (§§ 667, subds. (b)-(i); 1170.12, subds. (a)-(d)) and had served two separate prison terms for felonies (§ 667.5, subd. (b)). Represented by counsel, [petitioner] pleaded not guilty and denied the special allegations.

A jury convicted [petitioner] as charged and found true the allegation the victim was 65 years of age or older.  After the verdict, [petitioner] admitted the 2004 conviction for acting as an accessory to a gang-related murder and a 2009 conviction for possession of a controlled substance (Health & Saf. Code, § 11350) as prior prison term enhancements, but he asserted the 2004 offense could not be treated as a prior strike conviction because of the terms of his plea agreement in that case.

The trial court held a hearing on [petitioner's] Motion for Specific Performance of Plea Bargain and To Dismiss Prior as Barred by Collateral Estoppel, which was filed prior to trial.  [Petitioner] argued that, at the time of his plea, the People had understood he was only willing to accept a plea agreement that would not subject him to an enhanced sentence in the future because of a prior strike conviction on his record.  He asserted the parties had agreed [petitioner] would plead no contest to acting as an accessory to a gang-related murder as a non-strike offense, in return for an aggregate six-year state prison sentence.

At the hearing on the motion, the court received into evidence a transcript of the 2004 plea hearing.  [Petitioner] testified at the motion hearing that he had told defense counsel Monterroso that he would not agree to a negotiated plea that included a prior strike conviction and a lengthy prison sentence. According to [petitioner], he had previously rejected the People's offer of "12 years with a strike for manslaughter" because "it was a lot of time and it was involving with [sic] a strike."

Monterroso testified he could not recall either his discussions with [petitioner] or his plea negotiations with the prosecutor in 2004. Specifically, Monterroso did not remember whether he or the prosecutor had told [petitioner] that he was pleading to a non-strike offense.  Monterroso testified that according to his notes, [petitioner] had agreed to plead to acting as an accessory to a gang-related murder as a non-strike offense and was to be sentenced to a six-year term in state prison.  Monterroso acknowledged there was no mention in the plea hearing transcript of whether [petitioner] was pleading to a strike offense.  Monterroso testified it was consistent with his normal custom and practice to have the plea show the plea was to a strike offense, but not necessarily if the plea were to a non-strike offense. Monterroso also testified in his opinion, under the prevailing authority

3

1           in 2004, [petitioner's] gang-related felony offense was not necessarily a prior strike conviction.

2

3           In denying the motion, the trial court found [petitioner's] testimony less than credible and Monterroso's testimony unpersuasive.  The court reasoned because the state of the law in 2004 dictated that gang-related felony offenses constituted serious felonies under the three strikes law, [petitioner's] conviction for acting as an accessory to a gang-related murder was a strike offense, absent a contrary finding or statement in the record of the plea hearing.

4

5

6

7           At the sentencing hearing, the trial court imposed an aggregate state prison term of 12 years, consisting of six years for second degree robbery (the three-year middle term doubled under the three strikes law), plus five years for the prior serious felony enhancement, plus one year for the prior prison term enhancement.

8

9

10   (Lodgment No. 6 at 2-4) (footnote omitted).

11

12   **III.**

13   **PETITIONER'S CONTENTION**

14       The trial court breached the agreed-upon terms of petitioner's prior plea agreement, and

15   thereby deprived him of his rights to due process and equal protection, by applying California's

16   Three Strikes Law to the conviction stemming from the prior plea agreement.  (Pet. at 5).

17

18   **IV.**

19   **STANDARD OF REVIEW**

20       The Petition was filed after the enactment of the Antiterrorism and Effective Death Penalty

21   Act of 1996 ("the AEDPA").  Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Therefore, the Court

22   applies the AEDPA in its review of this action.  See Lindh v. Murphy, 521 U.S. 320, 336, 117 S.Ct.

23   2059, 138 L.Ed.2d 481 (1997).

24       Under the AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a

25   person in state custody "with respect to any claim that was adjudicated on the merits in State court

26   proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to,

27   or involved an unreasonable application of, clearly established Federal law, as determined by the

28   Supreme Court of the United States; or (2) resulted in a decision that was based on an

4

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  As explained by the Supreme Court, section 2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court."  Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389  (2000).  In Williams, the Court held that:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13; see Weighall v. Middle, 215 F.3d 1058, 1061-62 (9th Cir. 2000) (discussing Williams).  A federal court making the "unreasonable application" inquiry asks "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409; Weighall, 215 F.3d at 1062.  The Williams Court explained that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams, 529 U.S. at 411; accord: Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).  Section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings," Lindh, 521 U.S. at 333 n. 7, and "demands that state court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (per curiam).  A federal court may not "substitut[e] its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d)."  Id.; Early v. Packer, 537 U.S. 3, 123 S.Ct. 362, 366, 154 L.Ed.2d 263 (2002) (per curiam) (holding that habeas relief is not proper where state court decision was only "merely erroneous").

The only definitive source of clearly established federal law under the AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.

1   Williams, 529 U.S. at 412.  While circuit law may be "persuasive authority" for purposes of

2   determining whether a state court decision is an unreasonable application of Supreme Court law

3   (Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999)), only the Supreme Court's holdings

4   are binding on the state courts and only those holdings need be reasonably applied.  Williams, 529

5   U.S. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), cert. denied, 540 U.S. 968 (2003).

6   Furthermore, under 28 U.S.C. § 2254(e)(1), factual determinations by a state court "shall be

7   presumed to be correct" unless the petitioner rebuts the presumption "by clear and convincing

8   evidence."

9      A federal habeas court conducting an analysis under § 2254(d) "must determine what

10   arguments or theories supported, or, [in the case of an unexplained denial on the merits], could

11   have supported, the state court's decision; and then it must ask whether it is possible fairminded

12   jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

13   decision of [the Supreme Court]."  Harrington v. Richter, 526 U.S. 86, 101, 131 S.Ct. 770, 178

14   L.Ed.2d 624 (2011) ("A state court's determination that a claim lacks merit precludes federal

15   habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

16   decision.").  In other words, to obtain habeas relief from a federal court, "a state prisoner must

17   show that the state court's ruling on the claim being presented in federal court was so lacking in

18   justification that there was an error well understood and comprehended in existing law beyond any

19   possibility for fairminded disagreement."  Id. at 103.

20      The United States Supreme Court has held that "[w]here there has been one reasoned

21   state judgment rejecting a federal claim, later unexplained orders upholding that judgment or

22   rejecting the same claim rest upon the same ground."  Ylst v. Nunnemaker, 501 U.S. 797, 803,

23   111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).  Here, petitioner presented his sole ground for relief on

24   appeal to the California Court of Appeal, which issued a reasoned opinion rejecting that ground.

25   (See Lodgment Nos. 4-6).   Thereafter, the California Supreme Court summarily denied that

26   ground.  (See Lodgment No. 8).  Accordingly, this Court reviews the California Court of Appeal's

27   reasoned opinion rejecting petitioner's ground for relief under AEDPA's deferential standard.  See

28

1   Ylst, 501 U.S. at 803; Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (district

2   court "look[s] through" unexplained California Supreme Court decision to the last reasoned

3   decision as the basis for the state court's judgment).

4

5                                                    **V.**

6                                            **DISCUSSION**

7           In his sole ground for relief, petitioner contends that the trial court breached the

8   agreed-upon terms of his prior plea agreement, and thereby deprived him of his rights to due

9   process and equal protection, by applying California's Three Strikes Law to the conviction

10  stemming from the prior plea agreement.  (Pet. at 5).  According to petitioner, an understood term

11  in his prior plea agreement was that, under no circumstances, could the resulting conviction be

12  used as a "strike" offense for purposes of California's Three Strikes Law.  (Pet., Unmarked Attach.

13  at 1-3).  To support his understanding of the prior plea agreement, petitioner notes that, at the

14  hearing conducted by the trial court regarding this matter, his former trial counsel testified that his

15  notes indicated that he did not believe that the conviction would qualify as a strike.  (Id. at 3).

16  Petitioner also claims that his former trial counsel affirmatively told him that the conviction would

17  not qualify as a strike.  (Id. at 1-3).

18       **A.    California Court of Appeal Opinion**

19          The California Court of Appeal rejected petitioner's challenge to his sentence on its merits.

20  (Lodgment No. 6 at 4-6).  In doing so, the court of appeal stated:

21                  A defendant is entitled to relief for a violation of the terms of his
                 or her plea agreement without a showing of prejudice.  (In re Moser
22               (1993) 6 Cal. 4th 342, 354).  However, to find a term to be part of a
                 plea agreement, the circumstances must show the "'plea rest[ed] in
23               any significant degree on a promise or agreement of the prosecutor,
                 so that it can be said to be part of the inducement or consideration. .
24               . .'" (Id. at p. 355, quoting Santobello v. New York (1971) 404 U.S.
                 257, 262 [30 L. Ed. 2d 427, 92 S. Ct. 495]).  While a plea agreement
25               can contain implied terms, their existence must be supported by the
                 record.  (See e.g. People v. Paredes (2008) 160 Cal. App. 4th 496,
26               512 [Where post-conviction change in law rendered defendant
                 deportable; no showing that plea agreement included implied promise
27               of no deportation])

28               . . .

                                                      7

A negotiated plea agreement is interpreted according to the rules governing contracts because it is, in essence, a contract between the defendant and the prosecutor to which the trial court consents to be bound. (People v. Segura (2008) 44 Cal. 4th 921, 930-931 (Segura)). "[T]he 'interpretation of a contract is subject to de novo review where the interpretation does not turn on the credibility of extrinsic evidence.'" (People ex rel. Lockyer v. R.J. Reynolds Tobacco Co. (2003) 107 Cal. App. 4th 516, 520). "In contrast, '[i]f the parol evidence is in conflict, requiring the resolution of credibility issues, we would be guided by the substantial evidence test. [Citation.]' [Citation.] However, extrinsic evidence is not admissible to ascribe a meaning to an agreement to which it is not reasonably susceptible. [Citation.]" (ASP Properties Group, L.P. v. Fard, Inc. (2005) 133 Cal. App. 4th 1257, 1267).

. . .

[Petitioner] does not dispute that his 2004 conviction for acting as an accessory to a gang-related murder qualified as a strike offense at the time or that the record of the plea hearing is silent as to whether this prior conviction was treated as a strike or non-strike offense. Instead, [petitioner] argues the evidence he introduced at the motion hearing established that the nature of the conviction as a non-strike offense was a bargained-for term of the plea agreement. [Petitioner] maintains he is therefore entitled to specific performance of this term of the plea agreement.

Because the record of the plea is silent in this respect, the trial court permitted [petitioner] to introduce extrinsic evidence to demonstrate that his plea agreement rested on the term he was seeking to enforce. The evidence presented consisted solely of the testimony of [petitioner] and Monterroso. It was the role of the trial court to determine the credibility of that testimony. (People v. Zamudio (2008) 43 Cal. 4th 327, 357). The trial court found [petitioner] was not credible; Monterroso's testimony, even if credited in full, establish only that he believed the plea did not subject [petitioner] to a strike, not that this was a term of the plea bargain. A plea bargain is a form of contract, subject to general principles. (Segura, supra, 44 Cal. 4th 921 at pp. 930-931). Accordingly, in seeking to enforce the agreement, it was [petitioner's] burden to establish that the plea bargain incorporated the term he sought to enforce. He did not do so. As a result, the sentence was proper.

(Id.) (footnote omitted).

## B.   Federal Legal Standard and Analysis

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). "Plea agreements are contractual in nature and measured by contract law standards." In re Ellis,

356 F.3d 1198, 1207 (9th Cir. 2004) (en banc); Buckley v. Terhune, 441 F.3d 688, 695 (9th Cir. 2006) (en banc).  Under "clearly established federal law[,] . . . the construction and interpretation of state court plea agreements 'and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law.'"  Buckley, 441 F.3d at 694-95 (quoting Ricketts v. Adamson, 483 U.S. 1, 6 n.3, 107 S. Ct. 2680, 97 L. Ed. 2d 1 (1987)).

"Under California law, a contract must be interpreted so as 'to give effect to the mutual intention of the parties as it existed at the time of contracting.'"  Davis v. Woodford, 446 F.3d 957, 962 (9th Cir. 2006) (quoting Cal. Civ. Code § 1636).  In so doing, "[a] court must first look to the plain meaning of the agreement's language."  Buckley, 441 F.3d at 695 (citing Cal. Civ. Code §§ 1638, 1644).  "If the language in the contract is ambiguous, 'it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it[,]'" which means looking to the "'objectively reasonable' expectation of the promisee."  Buckley, 441 F.3d at 695 (citations omitted).  "If after this second inquiry the ambiguity remains, 'the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.'"  Id. at 695-96 (citations omitted).

Here, the court of appeal reasonably concluded that the State did not breach the terms of petitioner's prior plea deal by treating the conviction resulting from that deal as a strike for sentencing purposes.  As an initial matter, nothing in the plea colloquy suggests that the terms of the plea deal precluded the resulting conviction from being treated as strike under California's Three Strikes Law.  To be sure, petitioner insists that he believed that the plea agreement included this term and that he would not have entered into the plea agreement if he knew that the conviction qualified as a strike.  The trial court, however, found that petitioner was not credible on either point.  (See RT 1810).  This Court must defer to that credibility determination.  See Snyder v. Louisiana, 552 U.S. 472, 477, 128 S. Ct. 1203, 170 L. Ed. 2d 175 (2008) ("determinations of credibility and demeanor lie 'peculiarly within a trial judge's province'" and are entitled to deference "'in the absence of exceptional circumstances'") (citation omitted).

Although petitioner's former counsel testified that his notes reflected his belief that the conviction would not qualify as a strike, his belief is not enough to prove petitioner's argument for

several reasons.  First, counsel's belief says nothing of what the prosecutor believed, nor does it even suggest that the prosecutor promised petitioner that, in fact, the resulting conviction -- which petitioner does not dispute was a strike under California law -- would not be treated as a strike.  See Davis, 446 F.3d at 961 (holding that Santobello claim requires plea to be induced by promise from prosecutor).  Rather, at most, it suggests that petitioner's former trial counsel was mistaken in his understanding of which crimes qualified as strikes under the Three Strikes Law.  Second, the trial court found former trial counsel's testimony regarding his recollection about whether the conviction was a strike or not to be "under[whelming]" because, in the court's view, trial counsel "didn't seem to have a dramatic memory of actually what happened here." (RT 1514). Accordingly, there is little in the way of credible or persuasive evidence that supports petitioner's claim that the plea agreement included any promise by the prosecutor that petitioner's conviction would not be treated as a strike.  Consequently, petitioner cannot show that his current sentence constitutes a breach of his prior plea agreement.

Moreover, to the extent that there is any ambiguity in terms of whether the conviction would qualify as a strike, it nevertheless is not objectively reasonable to believe that the parties in the prior proceeding understood the plea agreement to preclude the resulting conviction from being treated as a strike.  As petitioner concedes, and as both the trial court and the court of appeal noted, the prior conviction qualified under California law as a strike pursuant to the Three Strikes Law.  (See RT 1515, 1806; Lodgment No. 6 at 5 n.2).  Thus, if the parties intended to craft an agreement that would deviate from California law, there is every reason to believe that petitioner's former counsel or the prosecutor would have stated as much during the plea colloquy.  Indeed, the trial court in petitioner's current case noted this fact in rejecting petitioner's interpretation of the prior plea agreement.  Specifically, the trial court stated:

> [W]henever there is a deal struck between two parties in which it is clear that an individual is getting a deal that is not going to be a strike especially when the original case was a murder case they normally state on the record as part of this plea bargain the defendant is pleading to a non-strike . . . [¶] . . . [A]nybody getting that kind of a plea disposition would put it on the record and make it clear that it was not a strike.

(RT 1805).

10

Furthermore, the fact that the record is silent on whether the conviction resulting from the prior plea agreement would be treated as a strike does not preclude the prior conviction from being used for such a purpose.  When accepting a defendant's plea, courts must inform defendants of only direct, rather than collateral, consequences of a no contest plea.  Torrey v. Estelle, 842 F.2d 234, 235 (9th Cir. 1988).  "The distinction between a direct and collateral consequence of a plea turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment."  Id. at 236.  In the Ninth Circuit, the possibility that a defendant will be convicted of another offense in the future and receive an enhanced sentence based on the current conviction is not a direct consequence of a no contest or guilty plea.  United States v. Brownlie, 915 F.2d 527, 528 (9th Cir. 1990) (rejecting defendant's challenge to voluntariness of guilty plea).  Because the trial court in petitioner's previous case had no obligation to inform him of possible enhancements based on future convictions, the trial court in petitioner's current case was free to use petitioner's prior conviction to enhance his current sentence without violating any term of the plea agreement upon which the prior conviction was based.  See Torrey, 842 F.2d at 235; Brownlie, 915 F.2d at 528.

Finally, in terms of challenging his current sentence, petitioner is precluded from challenging the validity of his prior conviction based on his former counsel's purported misunderstanding of the Three Strikes Law.  A state prisoner who has failed to pursue available remedies to challenge a prior conviction (or has done so unsuccessfully) may not collaterally attack that conviction later through a motion under 28 U.S.C. § 2254 directed at the enhanced state sentence.  See Lackawanna County Dist. Att'y v. Coss, 532 U.S. 394, 403-04, 121 S. Ct. 1567, 149 L. Ed. 2d 608 (2001).  In Lackawanna, the Court concluded that once a state conviction is no longer open to direct or collateral attack, the conviction may be regarded as conclusively valid.  Id. at 403.  If a sentencing court later uses that conviction to enhance a criminal sentence, the defendant cannot challenge the enhanced sentence through a federal habeas corpus petition.  Id. at 404.  The Supreme Court recognizes only one exception to this rule: where petitioner raises a claim of the denial of assistance of counsel as set forth in Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792 9 L. Ed. 2d 799 (1963).  Lackawanna, 532 U.S. at 404.

1   This precedent forecloses any claim based on the performance of petitioner's counsel in

2   his prior criminal proceeding.  To be sure, there is some evidence -- albeit far from definitive

3   evidence -- indicating that counsel in the prior criminal proceeding might have misunderstood

4   California law in terms of what is and is not a strike offense.  But, if anything, that purported

5   misunderstanding could only give rise to an ineffective assistance of counsel claim as to the prior

6   conviction.  Such a claim, however, would constitute a challenge to the constitutionality of the prior

7   conviction.  In other words, by arguing that his prior guilty plea was not knowing and voluntary due

8   to attorney error, petitioner would be attempting to do precisely what <u>Lackawanna</u> prohibits --

9   namely, attack his current sentence based on a challenge to the validity of a prior conviction.  <u>See</u>

10  <u>Lackawanna</u>, 532 U.S. 403-04 (<u>see</u> <u>supra</u>).  Because petitioner was not denied counsel in

11  connection with his prior conviction, <u>Lackawanna</u> forecloses any challenge to the constitutionality

12  of that conviction.

13       In short, petitioner has not shown that the sentence imposed by the trial court breached the

14  terms of his prior plea agreement.  Accordingly, the court of appeal's decision rejecting petitioner's

15  challenge to his sentence was neither an unreasonable application of, nor contrary to, clearly

16  established federal law as determined by the Supreme Court.

17

18  **CERTIFICATE OF APPEALABILITY**

19       Under Rule 11(a) of the Rules Governing § 2254 Cases, a court must grant or deny a

20  certificate of appealability ("COA") when it denies a state habeas petition.  <u>See also</u> 28 U.S.C. §

21  2253(c).

22       A petitioner may not appeal a final order in a federal habeas corpus proceeding without

23  first obtaining a COA.  <u>See</u> 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A COA may issue "only

24  if . . . [there is] a substantial showing of the denial of a constitutional right."  28 U.S.C. §

25  2253(c)(2).  A "substantial showing . . . includes showing that reasonable jurists could debate

26  whether (or, for that matter, agree that) the petition should have been resolved in a different

27  manner or that the issues presented were 'adequate to deserve encouragement to proceed

28  further.'"  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (citation

omitted); see also Sassounian v. Roe, 230 F.3d 1097, 1101 (9th Cir. 2000).  Thus, "[w]here a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack, 529 U.S. at 484.

The Court concludes that, for the reasons set out above, jurists of reason would not find the Court's assessment of petitioner's claim debatable or wrong.  Accordingly, a certificate of appealability is **denied**.  Petitioner is advised that he may not appeal the denial of a COA, but he may ask the Ninth Circuit Court of Appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure.  See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

## VI.

## ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Judgment is entered denying and dismissing the Petition with prejudice.  A certificate of appealability is also denied.

DATED: November 20, 2015

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE